New York Penal Law, section 120.05, sub 2, is not a crime of violence because it does not categorically require the substantial degree of force described in Curtis Johnson and because it does not categorically require the use of force at all inasmuch as it can be committed by omission rather than affirmative act. We have the case of Singh v. Barr and your argument seems to hinge on the view that that case will be reheard in Bank. Assuming that it is not reheard in Bank, we don't know whether it will be or not, if it remains the law, how can you prevail? I disagree with the premise that our argument hinges on that case being reheard on Bank, but just assuming that you're right, as you say, if that case remains the law, nevertheless this panel would still be bound by villa no eva, and that's the rule stated in Ta-Nehisi, the case that we submitted as our second letter in response to the Court's order, in the circumstance where a panel comes upon a conflict between two prior panel decisions. The Court has no choice, in the words of Ta-Nehisi, but to follow the ruling of the prior panel. In this case, the prior panel is Judge Newman's decision in villa no eva, and that decision, footnote 6 in particular, sets out what we view as the dispositive rule, which is villa no eva involved a statute that is materially identical to the statute at issue here, except that it required serious physical injury rather than ordinary physical injury, which is the And Judge Newman's opinion states that that additional requirement, the requirement of serious physical injury, was necessary to make that statute a crime of violence under Curtis Johnson. Isn't there a problem, though, for you to overcome, that when you look at section 120.052, and you look at the statute's own terms, it talks about a dangerous instrument. An item must be wielded such that it is readily capable of causing death or physical or other serious physical injury. That's certainly true of the In that particular statute that you're considering. Yes. In that particular statute, it requires the risk of serious physical injury, but not the actual causation of serious physical injury. And that difference is critical when we're talking about an elements clause analysis, because what we're trying to determine is whether the use of violent force as described in Curtis Johnson necessarily adheres in the conduct that must have been committed. So But if I could just ask you this. Sure. When you look at the deadly weapons in the statute, it says a deadly weapon is any and I'm quoting, any loaded weapon from which a shot readily capable of producing death or other serious physical injury may be discharged or a switchboard knife, ballistic knife, metal knuckle knife, dagger, billy, blackjack, plastic knuckles, or metal knuckles. And a dangerous instrument is defined under the statute as any instrument, article, or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury. You're absolutely right about the words of the statute, Your Honor, and I think they cut precisely in my favor. For one thing, plastic knuckles, I know the Court's opinion in Singh describes that any use of a deadly weapon necessarily creates this heightened risk. But I don't think that that's true of plastic knuckles. I mean, if somebody wears plastic knuckles and spanks a child while wearing them, that is necessarily satisfies the deadly weapon definition, but it does not create necessarily a risk of, I think, the kind of force that Your Honor is implying. As for the dangerous instrument definition, it's certainly true that the statute requires that the implement be intended to cause ordinary injury, actually cause ordinary injury,  My point, though, is that the risk in the ether tells the Court nothing about the force that was actually used, and that is the inquiry. It's not about how much force could have been used had the facts of the case been different. The question is how much force was actually used. And I would strongly caution the Court against moving into a risk-based analysis because that is precisely the type of analysis that was overturned. That was the analysis under 16b. And I think it would be a mistake to start working 16a back towards the type of 16b inquiry where the question is, is this the ordinary case? And then how much risk is involved in the ordinary case? That's the type of analysis that was struck down in Samuel Johnson. And I don't think that the Court ought to, in effect, return to that analysis by saying, okay, this would be a simple assault statute, but for this additional risk. And because there's a risk, we will necessarily find that there was more force used. I mean, Judge Katzmann, in your opinion in Cherzenowski, you made a point that I think is sometimes overlooked, which is that the government was making this argument about force and trying to create a match between a statute that says injury was caused and a statute that says force was used. In your opinion, you said that those terms are not synonymous. And so, at best, the government would have to show that there is implicit in the causation of injury the use of force. And that's the type of inquiry that we have to perform here. And when you're making that type of inquiry, I don't think that you can rely on the risk that's caused by the wielding of a particular implement. I guess my point is that the use of a dangerous instrument does not raise the floor of the minimum conduct that is required under the statute. That there are plenty of examples of dangerous instrument cases where the force used is nothing more than the ordinary force that would be used in a simple assault statute. I want to point out something that in the opinion in Castleman, when Justice Sotomayor is describing the difference between physical force as meant in the definition of domestic violence and physical force as described in Curtis-Johnson, she points out that a squeeze on the arm that's painful and causes a bruise couldn't really be described as violent in the Curtis-Johnson sense, but it's readily defined as domestic violence because that is a term of art. And sure enough, the Fourth Department, the appellate division in New York has held that ordinary injury, the type of injury that must be caused under 120.05 sub 2, is satisfied by a painful squeeze on the arm causing a bruise. That's people versus crats from the Fourth Department in 2017. So I think the Court really needs to view 120.05 sub 2 as a simple assault statute plus the addition of risk, and that addition of risk does not tell the Court anything about the amount of force used, which is really the inquiry at issue. I'm still not clear what you want us to do with the Singh decision. Well, what I want this... Do we ignore it? Do we distinguish it? What is your theory about it? Well, I can't frankly say that you can distinguish it because of the categorical approach. The object is to categorize a given statute and the Court has categorized that statute. What I'm saying is the situation that confronts this panel is that you have Villanueva on the one hand that clearly states serious physical injury was necessary to make that statute a crime of violence under Curtis-Johnson. And that is the distinguishing element that is not present here. And Singh came after? And Singh came after, that's correct. And Singh is inconsistent with that holding in Villanueva. And so that's the situation that confronts this panel. And in that circumstance, this is again the rule that's stated in Ta-Nehisi, what the Court would write in its opinion is we've identified these decisions, there is a conflict, and we are obligated to follow the rule stated in Villanueva. And this is just an expression of the — You mean it's the rule of this circuit that if there's a conflict, you always use the earlier decision? That's correct, Your Honor. That's the decision in Ta-Nehisi that explains this rule. And it's an outgrowth of the familiar principle that a panel is bound by the decisions of a prior panel. And so in a situation in which there is a conflict between two panel precedents, the second panel, the one that conflicts with the earlier panel, is not followed. Nothing had happened in the interim to persuade the Singh panel of the result it reached? I'm sorry, Your Honor? Nothing had happened in the interim to persuade the Singh panel to reach the result it reached. Well, the Singh panel's opinion does not discuss — it cites Villanueva at one point, but on a different issue. And it does not address the footnote argument that we made, and frankly, I don't believe that it was presented to the Singh panel either. So they were obviously aware of it. They didn't overlook it. They cited it. They cited the Villanueva case, and they were certainly aware of the Villanueva case. And I recognize that two of the judges from the Singh panel are in front of me. I'm not sure that I see the conflict between Singh and Villanueva. Well, the — I understand that you think there's a conflict, but we were thinking about it in terms of the particular statute and the statute's own terms to be a dangerous instrument. An item must be wielded such that it is, and I'm quoting, "... readily capable of causing death or serious or other serious physical injury." That's — And then there is a list of a number of instruments capable of doing that. You're absolutely right, Your Honor, and the Connecticut statute defined dangerous instrument in precisely the same way. And that's my point, and that's where the conflict lies, that the Connecticut statute was a dangerous instrument assault statute, defined dangerous instrument the same way, contained a similar list of deadly weapons, and nevertheless, the Villanueva panel stated that it was not the definition of dangerous instrument and deadly weapon, but rather the requirement of serious physical injury that was necessary to make that statute a crime of violence. And I see that conclusion as flowing directly from Castleman. I read Villanueva to be a full embrace of Castleman, both the distinction between indirect and direct uses that cuts against Mr. Hechevarria in this case, but also the distinction between the categorization of the degree of force that's required in order to satisfy Curtis Johnson. So I take Villanueva to say, on the one hand, we're going to apply Castleman. We're not going to draw a distinction between direct acts and indirect acts, and at the same time, we are also going to embrace Castleman's statement about the degree of force that is required to satisfy Curtis Johnson. And I described to you earlier the point about how a squeeze on the arm that causes a bruise. If we think, contrary to your argument, that we are bound by Singh, is that the end of your case? If the court feels bound by Singh, it's not the end of the case for the reason that. From this panel. I think it would be the end of the case from this panel to the extent that Singh is not withdrawn or reheard. So if the court disagrees with me that there's a conflict, and I really do not think that it should, but if the court disagrees with me about the conflict, then yes, the ordinary rule about being bound by earlier panels would apply, and we would rely on the prospect of Singh being withdrawn or reheard, and in that case, my hope would be that certainly the court has the power to do that. We know the court has the power to withdraw opinions because that happened in Thompson, one of the cases that was cited in the party's briefs. That case was that opinion, a published opinion, was withdrawn after the, at least after the Petitioner's initial brief was submitted. Has a mandate issued in Singh? The mandate has not yet issued in Singh, and the time to file a petition for rehearing and rehearing on Bonk has not yet lapsed. When does that occur? Tomorrow. Tomorrow? So we'll know more tomorrow. Yes, I believe that that is, I believe that that is. Or maybe Thursday. I know it's 45 days from the issuance of the opinion. Government case. Yes, an agency is a party. That's right, Your Honor. If I could briefly touch on the omissions piece, if I could, just for, just for one moment. I just want to. That was also taken care of in Singh. Yes, it was, and I can see that I have a harder argument there because I'm not able to rely on the conflict portion, but I do, I do think, and again, this is, this is me saying that I'm hoping that if the, if I can convince the three judges sitting in front of me that I'm right about omissions, that the court certainly has the power to reach the right result, the result at least that I believe is right, and if I can convince the court that it is the right result, I don't think there's any question the court has the power to reach that result as well. The, I take Singh's position generally to be similar to the Third Circuit opinion Ramos that Singh quoted. It's just impossible or nearly impossible to imagine a circumstance in which someone uses or causes injury by means of a dangerous instrument or deadly weapon by omission. I think that it's not just possible, it's relatively easy to think of a circumstance, and it's the circumstance that arose in People v. Wong. This is the famous Court of Appeals decision 1993. Two caretakers are charged with watching an infant. The infant dies. The forensic evidence shows that the infant died from being shaken, and the, the People proceeded against both caretakers on the theory that one had shaken the infant and the other was passive and allowed the shaking to occur in the face of a legal duty to intervene or seek medical aid. And the Court of Appeals decision in Wong stated that the legal theory, the People's legal theory in this prosecution was sound. That this is, this is, you know, black letter New York law. That you can be guilty by omission. The actus reus can be an omission if you have a legal duty to intervene. And that's exactly the circumstance that could arise all the time. In any circumstance in which one could imagine a dangerous instrument or deadly weapon assault in the parent-child context, it's not at all difficult to imagine one parent actually wielding the implement and the other parent allowing it to happen with the requisite mens rea, failing to intervene. And again, I, I really want to dispel the idea that a dangerous instrument or deadly weapon assault is necessarily a, a brutal attack. I mean, there are cases where a parent whacked a child with the wire end of a fly swatter. And that was deemed to be a dangerous instrument. Wielded in a way that was readily capable of causing serious physical injury. And serious physical injury can be something as small as a scar. And again, we're just talking about the risk of serious physical injury. Not the actual causation. So in circumstances like that, it's not, it's not necessarily the case that the assault would, would be of Curtis Johnson force. And the degree of force doesn't even matter when we're talking about omissions because it's not a use. Anytime you have one parent who commits the assault and the other who, the other who allows it to go forward in the face of a legal duty to intervene, that parent is guilty by omission. And in, I, I understand the, the question about how could you really wield an instrument at the same time doing it by omission. But I'd also point the court's attention to People v. Muhammad, a court of appeals case from 2011, which states that by means of, remember that the definition for dangerous instrument is causing injury by means of a dangerous instrument or deadly weapon. By means of is broad enough to allow a conviction in a circumstance where the offender does not possess the instrument and does not exercise dominion or control over it. So I think if you put those two precedents together, you have precisely the circumstance in which, that I'm positing, where it is, it is possible to imagine an assault by omission. You have to have a good imagination. I don't, Your Honor, I really don't think you have to have a good imagination. I mean, take the flyswatter example. I take your argument. You'll have two minutes for rebuttal. Understood. Thank you, Your Honor. Your Honors, may it please the Court, Jessie Carlson for the government. Your Honors, Singh answers the questions presented in this case directly. And particularly, the central question of whether Mr. Echevarria's conviction under New York Penal Law 120.05, subsection 2 is a crime of violence. You don't need to go any further. Your decision is binding and it answers all of the questions that have been presented. Singh does not conflict with Villanueva. In fact, the proposition in Villanueva was contained in a footnote, footnote 6, and it was discussing an entirely different statute. It was talking about Cherzynowski, which has been explicitly overruled by Castleman. Villanueva acknowledges in that particular situation, it was not, the Court didn't want to go that far based on those facts, but those are not the facts before this Court. Villanueva was a case that actually supports the government's case. It makes the point that we are trying to make, that using a deadly weapon to injure someone is in fact violent. It does not hold that serious injury is required. The quantum of injury is not relevant. Johnson makes that clear. The panel and Singh thoroughly discussed the situation presented in the footnote in Villanueva. While not citing Villanueva specifically in that particular section, the Court did cite Benegas, which involved the same statute. And walked through the analysis very thoroughly and came to the appropriate conclusion, which is when you use a deadly weapon or a dangerous instrument, those elements include or constitute a violent use of force. So there should be no debate about the quantum of force here, which is really the main argument that Petitioner is raising here. That question has already been decided. The examples that are given in the context of the omission argument are also not relevant to this situation. They involve a variety of hypotheticals that are highly improbable, or to the extent that there is any validity to any of them, they involve different facts. They don't involve the use of a deadly weapon or a dangerous instrument. In some situations that have been mentioned, there's a duty in the context of the case. And they certainly don't involve New York Penal Law 120.05 subsection two, which is the statute at issue in this case. The other point I'd like to make is that with regard to Cherzenowski, the case that Petitioner talks about, ultimately causing the conflict with regard to the footnote in Villanueva. That is a case that has been rejected by numerous panels since its decision. It's a case that didn't have the benefit of Castleman. There have been a number of Supreme Court decisions that have been decided since those cases were reviewed. And those cases have provided the information that we need to get to where this panel did in Singh, which is that the violation, the conviction in this situation is in fact a crime of violence under section 16A. There's really not much more unless the panel has questions that the government would like to say because Singh so definitively answers this question. And so the government has made all of these arguments in its briefs. And unless this Court has any questions, the government simply asks that this Court dismiss, deny this petition, and rely on its decision in Singh. Mr. Hetcheverry's counsel has indicated that if he goes, suggested that if he goes back to Jamaica, that he will likely die because there is not a medical treatment available in Jamaica. Is there anything about that that is of concern? Your Honor, I can't opine on what may or may not happen or speculate as to what may or may not happen, but there is case law in this circuit that supports the notion that a claim regarding medical care in this situation is not enough to enable Mr. Hetcheverry to remain in this country based on the facts of his case. And the board already rejected all of his claims for relief and protection in its use of discretion in some context, but certainly mandatorily based on the criminal conviction that he has in a couple of those situations. Thank you. Anything else? Thank you, Your Honors. Three points in rebuttal. As to Bonegas-Gomez and the Singh Court's discussion of that case, Bonegas-Gomez did not wrestle with Villanueva's footnote. He didn't talk about Villanueva's footnote. Bonegas-Gomez just said Villanueva decided this issue already in the context of ACCA. We agree that it can be applied to 16A, and we do so. And in the course of that opinion, Bonegas-Gomez quoted the serious physical injury language eight times. So I don't think that Bonegas-Gomez stands for the proposition that serious physical injury was unimportant. And the government hasn't offered the court any viable explanation for what that language in Villanueva means other than precisely what it says. And I understand that it's a footnote, but there are lots of important footnotes throughout legal history, the footnote four and caroline products among them. In terms of the omission argument and the government's suggestion that we have to supply a particular case that's precisely the facts that we posit, precisely the statute that we're discussing, I fundamentally disagree. And I think this court fundamentally disagreed in Hilton versus Sessions in 2018 because the basic project here is to determine what does state law mean. The court is bound by state law and as matters of federalism and comedy, it's important that the court faithfully applies state law. And in this case, we're just trying to determine what does state law mean and whether the particular statute in question necessarily requires that a Curtis Johnson level of force has been used, not risk created, but force used. And the requirement that a petitioner supply a given case really just turns on defendant went to trial instead of pleading out like the vast majority of criminal defendants do, which case made it into the federal reporter, what tactical decisions that a prosecutor makes in charging one case rather than the other. What I need to do is demonstrate a realistic probability based on human experience was one of your phrases, judge Katzman and Terzanoski. And I can rely on cases that involved different subsections of a statute. Again, I'll cite Terzanoski where the court did precisely that. And my final point is just about the consequences. Judge Katzman, you asked and it's not just me saying it, these are findings from the habeas proceeding in which we participated, that Mr. Hatcheveria does indeed have serious medical problems that will make it extremely difficult for him to obtain the life-saving treatment that he needs. And the consequences for him are not materially different than the consequences for people throughout this circuit. I mean, that's one of the characteristics of this physical force, violent force inquiry. It has serious ramifications for many different statutes which use the same terms and for the people who are subject to them. Can you wrap up? Certainly, Your Honor. That was the last thing that I wanted to say, just that because of those circumstances, it's not our case for the court to perhaps do something that's unusual, this would be it. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision.